# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### DECEMBER SESSION, 1997

FILED

March 3, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9611-CR-00442** |
| | ) | |
| Appellee, | ) | **KNOX COUNTY** |
| | ) | |
| **V.** | ) | **HON. RICHARD BAUMGARTNER,** |
| | ) | **JUDGE** |
| **SHIRLEY ADAMS ROGERS,** | ) | |
| | ) | **(ATTEMPTED SECOND** |
| Appellant. | ) | **DEGREE MURDER)** |

FOR THE APPELLANT:

**MARK E. STEPHENS**
District Public Defender

**PAULA R. VOSS**
Assistant Public Defender

**JOHN HALSTEAD**
Assistant Public Defender
1209 Euclid Avenue
Knoxville, TN 37921

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TIMOTHY F. BEHAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**RANDALL E. NICHOLS**
District Attorney General

**CHARM JOHNSON**
Assistant District Attorney General

**GREGG HARRISON**
Assistant District Attorney General
City-County Building, Suite 168
400 Main Street
Knoxville, TN 37902-2405

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Shirley Adams Rogers, appeals as of right her conviction of attempted second degree murder following a jury trial in the Criminal Court of Knox County. The Knox County Grand Jury indicted Defendant on two (2) counts of attempted first degree murder. However, Defendant was found guilty of only one (1) count of attempted second degree murder, and not guilty of the other indicted charge. The trial court initially sentenced Defendant to eleven (11) years as a Range I Standard Offender at 30 percent to be served in custody. The trial court subsequently entered an amended judgment following the hearing on the Motion for New Trial, reducing Defendant's sentence to ten (10) years. Defendant raises two (2) issues in this appeal: (1) whether the evidence is sufficient beyond a reasonable doubt to support the conviction for attempted second degree murder; and (2) whether the trial court committed sentencing errors. We affirm the judgment of the trial court.

Testimony at trial revealed that on June 6, 1995, Don Rogers, ex-husband of Defendant, was dropped off at his house by his girlfriend around 11:00 p.m. He saw his neighbor, Carolyn Owen, outside and invited her to join him at his house while he ate bacon and eggs. Shortly after she went over to Rogers' house, Owen heard someone trying to get in through Rogers' front door. Rogers ran to the door and pushed it closed and told Owen to come and hold the doorknob and put her foot against the door while he retrieved his gun. While Owen was holding the door, two shots were fired through the door. Owen and Rogers then ran toward the back of the house and into the kitchen. Don Rogers saw his ex-wife, the Defendant, enter the house. He fired two shots at Defendant, then withdrew. At this point, Owen and

-2-

Rogers went to the bathroom/laundry room to hide. While Owen waited in the laundry room, Defendant fired a shot into the hall. When Rogers looked around the corner from the hall, shots were fired in his direction. Rogers returned fire and then he and Owen fled out the back door when Defendant stopped shooting. Defendant never said a word during this confrontation. Owen and Rogers ran to a neighbor's house and waited there for the police to arrive. Neither of them was injured.

The responding police officer, Robert Cole of the Knoxville Police Department, found Defendant sitting on Rogers' couch with a gun beside her and two chest wounds. Defendant's gun was capable of firing six bullets. The police found six "spent casings" from Defendant's gun. It appears from Officer Cole's testimony that two bullets from Defendant's gun were fired into the house from the outside and three were discharged inside the house. As discussed below, Defendant's proof indicated that the gun was fired earlier that evening in Defendant's motel room, thus explaining the sixth bullet. Don Rogers' gun was also confiscated and it appears that four bullets had been fired from his gun inside the house, two striking the victim, one passing through the front wall to the outside and one lodging in the floor. Police found an empty holster in Defendant's purse in her car and papers with what appeared to be "fresh" blood on them. Medical records revealed that Defendant's blood alcohol content when she arrived at the hospital after the shooting was .19 percent.

Don Rogers testified at trial that during divorce proceedings, Defendant wanted to buy a new house but could not qualify for the loan by herself. As a result, Rogers co-signed the loan with Defendant for the house where the shooting subsequently occurred. In their divorce decree there was a provision allowing Don

Rogers to take possession of the house if Defendant fell three (3) payments behind. In 1992 Defendant defaulted and Don Rogers took possession of the house but allowed Defendant to continue living there with him as a "boarder." However, after three years of this arrangement, he evicted her and she went to live in a homeless shelter for two months prior to the shooting and had moved into a motel room on the day of the shooting.

Defendant's half-sister, Vernell Durham, testified that she received a phone call from Defendant about 9:00 p.m. on the night of the shooting and she described Defendant as being "really, really upset." She said that Defendant told her she wanted to blow her own brains out. Ms. Durham testified that she heard the clicking of a gun several times over the phone.

Gordon White, a friend of Defendant's, testified that he received a phone call from Defendant just an hour before the shooting. White described Defendant as "upset" and "in a depressed mood." He also said that she was in "a very confused state of mind" and "under duress." White testified that Defendant had been drinking and that she was threatening to shoot herself. He said that she was crying and becoming hysterical and then he heard a noise in the background. At this point, Defendant told White that she had shot herself in the head. White told her to hang up the phone, go look in the bathroom mirror to see how much harm was done, and then to call him back in five minutes. Defendant followed his instructions and called White back a few minutes later. In this second phone call, she told White that her head was bleeding but that the bleeding was slowing down. White testified that Defendant was more frantic and that her speech was more slurred in this second phone call. White also testified that he went to visit Defendant in the hospital after

the shooting at Don Rogers' home, and that Defendant had abrasions on the right side of her face that went up her cheek and into her hairline.

John Jacobs testified that he did not personally know Defendant, but that he and his fiancee were staying in the room above Defendant's room in the motel on the night of the shooting. He said that late that evening the window in his room broke, and that he first assumed it was caused by lightning because it was storming outside. Jacobs testified that he then noticed a hole in the floor with what appeared to be sawdust surrounding it. At this point he thought lightning had struck the floor and gone through to the first floor of the motel. He decided he should check on the person staying below him, who was the Defendant. As he was about to go check on her, he saw Defendant leave her room and go to her car. He noticed that she was carrying a purse with a some type of bottle in it. As she backed out of her parking space, Defendant bumped two cars and then ran over a couple of curbs while exiting the parking lot. The following morning, Mr. Jacobs found a bullet laying on his air conditioning duct.

The jury found the Defendant guilty of the attempted second degree murder of Don Rogers, and not guilty of any crime against Carolyn Owen.

I. Sufficiency of the Evidence

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Williams, 914 S.W.2d 940, 945 (Tenn. Crim. App. 1995) (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Defendant argues that the evidence was insufficient to convict her of attempted second degree murder. Second degree murder is defined as "A knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Tennessee Code Annotated section 39-11-302 provides the following with respect to the knowing requirement:

> 'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b).

Under our criminal attempt statute, Tennessee Code Annotated section 39-12-101, Defendant must have acted intentionally in pursuing a course of conduct that would constitute the offense. Attempted second-degree murder is committed when the accused knowingly acts with the intent to cause the killing and believes her conduct will cause the death without further action, or knowingly acts with the intent to cause the death, under the circumstances surrounding the conduct as she believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. Tenn. Code Ann. § 39-12-101(a)(2) and (3).

This Court has held that attempted second degree murder may be proven by a showing the defendant "intentionally acted with the requisite culpability to commit the offense of murder in the second degree" and the defendant "could have been convicted of murder [in the] second degree . . . if he had actually killed the victims." State v. John L. Smith, C.C.A. No. 01C01-9309-CR-00308, Davisdon County (Tenn. Crim. App., Nashville, Oct. 20, 1994) (no Rule 11 application filed); see also State v. Edward Thompson, C.C.A. No. 03C01-9503-CR-00060, Cocke County (Tenn. Crim. App., Knoxville, Dec. 12, 1996) (Rule 11 application denied June 30, 1997); State v. Timothy Jenkins, C.C.A. No. 01C01-95-8-CC-00269, Wayne County (Tenn. Crim. App., Nashville, Nov. 15, 1996) (Rule 11 application denied June 9, 1997).

Defendant argues that, at the very worst, her actions against Don Rogers constituted attempted voluntary manslaughter because at the time of the shooting, she was "in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). The record reveals that Defendant got her gun, drove to Mr. Rogers' home, started shooting through the door, and once inside the home, began following Defendant through the house while shooting at him five times. While there was evidence that Defendant was in an emotional state at the time of the shooting, the jury apparently concluded that Defendant was aware that her conduct was reasonably certain to cause the death of Don Rogers and that she did in fact fire the gun with the intent of hitting Mr. Rogers. In light of all the evidence adduced at trial, it was within the province of the jury to reject Defendant's theory that she was adequately provoked and acting in the "heat of passion" and to find instead that Defendant was guilty of attempted second degree murder. Thus, we conclude that, when viewed in the light most favorable to the State, the evidence presented at trial is legally sufficient to sustain Defendant's conviction for attempted second degree murder.

## II. Sentencing

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative

showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). There are, however, exceptions to the presumption of correctness. First, the record must demonstrate that the trial court considered the sentencing principles and all relevant facts and circumstances. Id. Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing. Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts. State v. Smith, 898 S.W.2d 742, 745 (Tenn. Crim. App. 1994), perm. to appeal denied, id. (Tenn. 1995).

Our review requires an analysis of: (1) The evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, & -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the facts and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Upon review of the record, we find that the trial court followed proper statutory sentencing procedure, and therefore, review by this Court is de novo with a presumption of correctness.

The trial court found the following three enhancement factors to be applicable: (1) Defendant had a previous history of criminal convictions or criminal behavior; (2) Defendant employed or possessed a firearm during the commission of the offense; and (3) Defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(1), (9) and (10). The court initially found no mitigating factors to apply, but amended the judgment to include one mitigating factor, that Defendant was suffering from a mental condition that significantly reduced her culpability for the offense. Tenn. Code Ann. § 40-35-113(8). This reduced her original sentence of eleven (11) years to (10) years.

Defendant argues that no more than two enhancement factors apply in this case, neither of which should receive great weight. Defendant also argues that several mitigating factors which were rejected by the trial court should be used to mitigate the sentence and reduce it to a minimum Range I term of eight (8) years, thus, making Defendant eligible for probation.

Defendant was previously convicted of three misdemeanors, including two public intoxication charges and a reckless driving charge. The judge noted that this factor was to receive little weight in setting the sentence. Defendant agrees with this determination. The judge also found that Defendant used a firearm in the commission of this offense and stated that he found this factor "of particular importance" and was therefore "giving particular weight to [this] enhancement factor." Defendant concedes that this factor is applicable, but argues that it should be afforded little weight. First, Defendant asserts that she had the gun for the purpose of committing suicide. Regardless of what Defendant's intentions were

earlier in the evening, she ultimately used that firearm to fire at another individual. The fact that it was unusual for Defendant to carry a firearm and that she claims she is unskilled with guns, "as evidenced by her total inability to hit her presumed targets," has no bearing whatsoever on the application of this factor, although Mr. Rogers is certainly fortunate that Defendant was not a "good shot." Defendant also argues that the use of the firearm did not significantly increase the danger of the crime because if she had chosen another weapon, such as a knife, the danger would have been as equal. This argument is without merit because had Defendant chosen to use a knife instead of a gun, this factor would still be applicable since either one qualifies as a deadly weapon. See Tenn. Code Ann. § 39-11-106(a)(5)(A) and (B). Clearly, the trial court was justified in placing great weight upon this enhancement factor.

Defendant argues next that the application of enhancement factor ten (10) was inappropriate in this case. The application of enhancement factor (10) is appropriate where the attempted killing occurred in the presence of others who were exposed to the potential of injury or death by the criminal actions of the person being sentenced. In the instant case, Ms. Owen was present in the house, and therefore, was in harm's way. It is certainly conceivable that she could have been hit by shots from Defendant's gun. See State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App.), perm. app. denied (Tenn. 1994); State v. John L. Smith, C.C.A. No. 01C01-9309-CR-00308, slip op. at 6.

Enhancement factor (10) is appropriate in this case regardless of the fact that Defendant was found not guilty of the attempted murder of Ms. Owen. The jury

verdict would not preclude the trial court from concluding that the risk to the life of Ms. Owen was nevertheless great. With respect to enhancement factor (10), our supreme court in State v. Jones explained: "As a practical matter, hesitation or lack of hesitation does not submit readily to proof because of its subjective nature. The more logical interpretation of this enhancement factor places the emphasis on 'risk to human life was high.'" 883 S.W.2d 597, 602 (Tenn. 1994). Therefore, "[l]ittle, if any, emphasis is to be placed on whether the defendant 'hesitated' before committing the crime." State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995). Although it is certainly conceivable that Defendant knew of another person's presence in the house besides Mr. Rogers at the time she started shooting, we find that this finding is unnecessary to conclude that Defendant's conduct nevertheless posed a grave risk to the life of Ms. Owen. We find no error in the application of enhancement factor (10).

Defendant argues that the trial court erred in not applying the following mitigating factors found in Tennessee Code Annotated section 40-35-113:

(2) Defendant acted under strong provocation;

(3) Substantial grounds exist tending to excuse or justify Defendant's criminal conduct, though failing to establish a defense;

(11) Defendant committed the crime under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated her conduct;

(12) Defendant acted under the duress or the domination of another person; and

(13) Other factors consistent with the purposes of the chapter.

Tenn. Code Ann. § 40-35-113(2), (3), (11), (12) and (13).

The trial court did place considerable weight on factor (8), that Defendant suffered from a mental defect, by reducing her sentence from eleven (11) years to ten (10) years following the hearing on Defendant's Motion for New Trial.

First, Defendant claims she acted under strong provocation based upon her past history with her ex-husband. The nature and circumstances of this offense do not demonstrate the kind of strong provocation required to mitigate sentences. See State v. Galbreath, C.C.A. No. 01C01-9406-CC-00204, Dickson County (Tenn. Crim. App., Nashville, Sept. 1, 1995) (no Rule 11 application filed). Furthermore, there is no evidence in the record that Defendant was provoked by Defendant. As the trial judge stated at the motion for new trial hearing, "This was an unprovoked act on [Defendant's] behalf. She may have been angry, based on her circumstances, and felt that life had dealt her an unfair hand. And that may be true. But that certainly is not, in my mind, what I would consider provocation or substantial grounds tending to excuse conduct or duress of any type." We agree, thus making this factor inapplicable.

Again, Defendant argues that her stormy past with her ex-husband should act to justify or excuse her conduct in accordance with mitigating factors (3) and (11). Although Mr. Rogers may not have been a model husband, his actions in the past do not justify Defendant's attempt to kill him. We therefore do not believe that mitigating factor (3) is applicable. Likewise, we do not find that there was not a sustained intent by Defendant to violate the law. Defendant drove her car to her ex-husband's house, walked to the door, began firing through the door, and then once inside, followed him through the house while firing at him. These facts do not

support the application of factor (11), as it is clear that Defendant had a sustained intent to violate the law.

Defendant also urges this Court to find that she acted under duress or domination of another person. Although Defendant may have been emotionally distressed, it cannot be said that someone other than herself caused her actions. Clearly, Don Rogers did not urge or assist Defendant in firing her gun at him. Thus, factor (12) does not apply.

Finally, Defendant insists that the trial court should have considered her advanced age, her record of employment, the serious injuries she sustained in this case, and her ability to be rehabilitated without further incarceration. Although these are not specifically included in the list of mitigating factors contained in the Sentencing Act, the trial court can consider "any other factor consistent with the purposes of this chapter." Tenn. Code Ann. § 40-35-113(13). Therefore, it was for the trial court's discretion whether to consider the factors and the weight to be given to any such evidence. We believe that even if each of these non-statutory mitigating factors were given some consideration, the great weight attributable to the applicable enhancement factors more than justifies the sentence imposed. We agree with the trial court's application of the enhancement and mitigating factors.

Tennessee Code Annotated section 40-35-210 provides that the minimum sentence within the range is the presumptive sentence for a Class B felony. Tenn. Code Ann. § 40-35-210(c). If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the

range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). If the trial judge complies with the purposes and principles of sentencing and his findings are adequately supported by the record, then the weight assigned to the existing enhancing and mitigating factors is generally left to his discretion. See State v. Marshall, 870 S.W.2d 532, 541 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1993). Attempted second degree murder, a Class B felony, has a sentence range of eight (8) to twelve (12) years for a Range I offender. Tenn. Code Ann. §§ 39-12-107(a) and 39-13-210(b). The trial court correctly found three enhancement factors to apply and one mitigating factor to apply. Even if the trial court had applied any of the non-enumerated mitigating factors they would not have weighed heavily against the three enhancement factors. The trial court was justified in imposing the ten (10) year sentence.

Defendant's argument that she is entitled to consideration for probation is based upon the premise that her sentence must be reduced to the minimum sentence of eight (8) years. Since we find that the ten (10) year sentence imposed by the trial court is appropriate, Defendant is not eligible for probation. Tenn. Code Ann. § 40-35-303(a).

After a thorough review of the record, we find no merit to the Defendant's arguments. Her conviction and her sentence are accordingly affirmed.


_____
THOMAS T. WOODALL, Judge


CONCUR:

_____
DAVID H. WELLES, Judge


_____
DAVID G. HAYES, Judge